UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------

STEPHANIE WAGNER,                                      Civil Action No:    21-CV-7092

*Plaintiff & putative*
*Class Representative,*

    -against-

NEW ERA RELOCATION LLC, MOVING                          VERIFIED
SOLUTIONS LLC, GOLD STANDARD                   CLASS ACTION CIVIL RICO
RELOCATION, MEDE KARIMOV A/K/A             COMPLAINT (18 U.S.C. §1964)
MEDETBEK KARIMOV, THOMAS GALCZYNSKI,         WITH INJUNCTIVE
JENNIFER BLAKE, SAMMI "DOE",                & DECLARATORY RELIEF
RYAN F "DOE", RELOCATE US
LLC and MARGARET BOVARD DRAYTON
a//k/a MAGGIE DRAYTON,                          JURY TRIAL DEMANDED
                                *Defendants.*
    _____

Plaintiff and putative class representative, Stephanie Wagner complains as follows:

INTRODUCTION

    Presently pending before Judge Seybert and Magistrate Wicks of this court is *Spinner, Pompliano and Schwartz v. New Era et al*, 20-cv-06288-JS-JMW.  *Spinner* alleges Defendants violations against consumers in New York and nationwide under the Carmack Amendment, 49 U.S.C. §14706, that imposes strict liability upon common carriers for damages to goods in transit, deceptive business practices and other causes of action.  A preliminary injunction was issued in *Spinner* upon this court finding that Defendants are likely all connected.  Since *Spinner* was filed, hundreds more consumers, including Plaintiff Wagner in this case, made complaints to numerous state and federal authorities that revealed Defendants are operating an illegal enterprise under the Racketeer Influenced and Corrupt Organization Act ("RICO").  Accordingly, this case adds civil RICO claims and requests further injunctive relief under RICO's 18 U.S.C. §1964 et seq. against Defendants for their 18 USC §1962 violations causing serious damage to consumers in New York and nationwide by Defendants thefts, extortions and frauds to con consumers to enter into Binding Estimates under the pretense of United States Department of Transportation ("US DOT") Federal Binding Estimates and other contracts, then extorting consumers for thousands of dollars more than the Binding Estimate and on top of the

thousands they already paid Defendants by holding their property hostage for cash ransoms or stealing it to sell for more money.

The 18 U.S.C. §1964 restraint requested in this case is in addition to the damages requested in *Spinner*, and will protect the public from Defendants' future RICO violations as well as put State and Federal authorities on notice to enforce their laws and rules, including criminal laws.

## PARTIES

1.     At all times mentioned herein, Plaintiff Stephanie Wagner was an individual and natural person domiciled in the State of New York and a consumer of interstate moving services in the State of New York from the following named Defendants.  Plaintiff is now domiciled in Hawaii.

2.     Defendant **NEW ERA RELOCATION LLC ("NEW ERA")** was a North Carolina limited liability company conducting business in the State of New York, listing on its contract, corporate documents and website a headquarters at "111 North 3rd Street, Smithfield NC 27577" and  at "933 Beville Road, South Daytona, Volusia County, Florida" in filings with the Florida Secretary of State.

3.     Defendant **NEW ERA** operated a common carrier business, as defined by the Carmack Amendment, under USDOT number 3371822, which the USDOT suspended on November 19, 2020 and revoked December 22, 2020; however, as shown herein below, **NEW ERA** continued to illegally operate a motor carrier business and steal consumers' property.

4.     Defendant **MOVING SOLUTIONS LLC** is the legal name and owner of Defendant **GOLD STANDARD RELOCATION**, a limited liability company organized and existing under Florida laws, and doing business in this venue and nationwide (collectively, "**GOLD STANDARD**"), listing a business address with the USDOT of "933 Beville Rd unit 101 h South Daytona FL 32119", being the same address listed for **NEW ERA**.   **GOLD STANDARD** operates as a common carrier and/or broker operating, managing and holding Defendant **NEW ERA** as its wholly owned subsidiary.

5.     Defendant **RELOCATE US LLC** ("**RELOCATE**") is a limited liability company organized and existing under Florida laws, listing the same office for the transaction of business as Defendants **NEW ERA** and **GOLD STANDARD** at 933 Beville Road, South Daytona, Volusia County, Florida."

6.     Defendant **MEDE KARIMOV** a/k/a Medetbek Karimov, upon information and belief, is at 33 Diamante, Irvine, California 92620, cell phone 202-300-9630 and uses an e-mail of KGVanlines@gmail.com, and Defendants **THOMAS GALCZYNSKI, JENNIFER BLAKE,**

**SAMMI "Doe"** and **RYAN F "Doe"** are all natural persons actively involved as principals, officers, agents, servants or employees of Defendants **NEW ERA** and **GOLD STANDARD**.

7.     Defendant **MARGARET BOVARD DRAYTON** a/k/a MAGGIE DRAYTON ("DRAYTON") is a natural person who, upon information and belief, is domiciled in Florida at 1490 James Street, New Smyrna Beach, Volusia County.

8.     Defendant **DRAYTON** dominates, manages and controls and is a principal, owner, member and/or manager, servants and/or employee of Defendants **NEW ERA, GOLD STANDARD** and/or **RELOCATE**.

9.     Defendants **NEW ERA, GOLD STANDARD** and **RELOCATE** (collectively, the **"LLC Defendants"**) and Defendants **KARIMOV, GALCZYNSKI, BLAKE, SAMMI "Doe"**, **RYAN F "Doe"** and **DRAYTON** (collectively, the **"INDIVIDUAL Defendants"**) jointly and severally procure carrier contracts in their ongoing scheme of conversion, theft, extortion and concealment of consumer property.

10.    Each reference herein to "Defendants" refers to and includes each of the said **LLC Defendants** and **INDIVIDUAL Defendants**, acting jointly and severally.

<u>JURISDICTION AND VENUE</u>

11.     The Court has "federal question" subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the claims herein arise under federal statutes 49 U.S.C. §14706 (the "Carmack Amendment") and pursuant to the RICO statute 18 U.S.C. §1964.

12.     More than 100 putative class members exist and the amount in controversy by any one plaintiff is not less than $25, nor less than $50,000 of the aggregate of all claims.   Plaintiff is diverse from all Defendants as she is a citizen and domicile of a state different from Defendants. 15 U.S.C.A. §2310(d)(3).

13.    Pursuant to the Class Action Fairness Act ("CAFA"), the aggregate claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and inclusive of punitive damages, treble damages and attorney's fees, including pursuant to New York's General Business Law and RICO (18 U.S.C. §1964) .  This is a class action in which many proposed plaintiff class members are citizens of different states from Defendants.

14.    Jurisdiction over the pendent state claims exists under 28 U.S.C. §1367(a) as they are part of the same case and controversy.

15.    Declaratory and injunctive relief is available under 28 U.S.C. §§2201 and 2202 and under RICO's 18 U.S.C. §1964.

16.    Venue is proper in this district under 28 U.S.C. §1391(b)(2) and (d) because a substantial part of the events or omissions giving rise to the claims and injuries at issue occurred in this district and this court is presently addressing the companion case in *Spinner* which this case has the exact Defendants and allegations with this case adding RICO claims, and as such, the cases should be consolidated.  Also,  Defendants' websites and e-mails procure business here, they regularly conduct and transact business here and an injunction against Defendants **GOLD STANDARD** and **NEW ERA** was issued on January 14, 2021 in *Spinner*, docket 16, in this venue, and that injunction shows the **LLC** Defendants are likely the same operation and, accordingly, this venue is proper for this action as it is presently handling the same Defendants and issues.

17.    C.P.L.R.  §§301 and 302 also subject Defendants to personal jurisdiction within this state, and the causes of action set forth herein arose out of Defendants' transactions with Plaintiff within the State of New York.

18.    At all times mentioned herein, Defendants' websites at https://goldstandardrelocation.com and https://newerarelollc.com were operational in New York and used by New York citizens and consumers who will benefit from a RICO 18 U.S.C. §1964 injunction.

## RICO FACTS

19.    The USDOT Federal Motor Carrier Safety Administration ("FMCSA") monitors and enforces regulations governing safety and commerce for interstate motor carriers, which includes federal regulations governing the transportation of household goods by licensed motor carriers (i.e., movers).

20.    Federal regulations require all interstate motor carriers transporting household goods for individual shippers by motor vehicle to follow federal regulations relating to the interstate transportation of household goods, which Defendants violated as this complaint shows below.

21.    Under federal regulations, motor carriers who move household goods must be licensed and registered with the USDOT.

22.    Under federal regulations, the USDOT requires interstate motor carriers, among other things, to provide estimates of moving charges to potential customers in writing, indicating whether the estimate is a "binding" or "nonbinding" estimate,

23.    Under a binding estimate, the customer and motor carrier both agree in writing to a charge for services prior to the start of any work.  The USDOT prohibits the interstate carrier from raising the price of the move unless the carrier and consumer re-negotiate the price prior to the

commencement of the move, which Defendants consistently violated this rule to illegally extract money from consumers, as the complaint shows below.

24.   USDOT regulations forbid interstate motor carriers from increasing the price of a move above the price set forth in a binding estimate after loading customers' household goods.

25.   At all times relevant hereto, the **LLC Defendants** and **INDIVIDUAL Defendants** operated as if they were a single corporate entity by operating and working through affiliated companies named as Defendants **NEW ERA, MOVING SOLUTIONS LLC, GOLD STANDARD, RELOCATE US LLC**, and other entities presently unknown.

26.   At all times relevant hereto, the **LLC** and **INDIVIDUAL Defendants** owned, operated, and worked as employees, members, and associates of the affiliated companies to move interstate shipments of household goods.

27.   At all times relevant hereto, the **LLC** and **INDIVIDUAL Defendants** coordinated and directed lower-level employees, members, and associates of the affiliated companies.

28.   At all times relevant hereto, the **LLC** and **INDIVIDUAL Defendants** operated the affiliated companies from multiple locations and used warehouses, trucks, emails, bank wires and websites throughout New York and the Eastern District of New York and throughout the United States, including New York, New Jersey, Florida, North Carolina, California and Colorado, using a common business address at 933 Beville Road, South Daytona, Florida.

29.   At all times relevant hereto, the **LLC** and **INDIVIDUAL Defendants** constituted an "Enterprise" as defined in 18 U.S.C. § 1961(4) as a group of individuals and entities associated in fact and engaged in a common purpose, the activities of which affected, interstate and foreign commerce, referred to hereinafter as the "Moving Enterprise."

30.   The Moving Enterprise constitutes an ongoing and continuing organization whose members function as a continuing unit for the common purpose of achieving the objectives and purposes of the Moving Enterprise, which include the following:

(a)   Enrich the Moving Enterprise and its owners, operators, employees, members, and associates by defrauding, extorting, and stealing money and property from consumers who hire its affiliated companies to move their household goods.

(b)   Promote and perpetuate the Moving Enterprise and shield its criminal activities from law enforcement authorities, state and federal agencies and consumers by concealing the true owners, operators, employees, and operations of affiliated companies of the Moving

Enterprise, including by creating fictitious businesses to steal money and property from consumers by using interstate wires.

**The Racketeering Conspiracy**

31.   From in or about December, 2018, and continuing through the date of this complaint, in the Eastern District of New York and elsewhere, the **LLC** and **INDIVIDUAL Defendants**, each being a person employed by, a member of, and associated with the Moving Enterprise, an Enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown, did knowingly and intentionally conspire to conduct and participate, and did conduct and participate, directly and indirectly, in the conduct of the affairs of the Moving Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5), consisting of multiple acts indictable under:

(a)   18 U.S.C. § 1343 (wire fraud);

(b)   18 U.S.C. § 659 (theft from interstate shipment);

(c)   18 U.S.C. § 1951(a) (interference with commerce, robbery, or extortion);

(d)   18 U.S.C. § 1028(a) (fraud and related activity regarding identification documents).

32.   It was part of the Moving Enterprise that each **INDIVIDUAL Defendant** amongst each other and the **LLC Defendants** agreed to commit, and did so commit, at least two acts of racketeering activity in the conduct of the affairs of the Moving Enterprise.

33.   Among the manner and means employed by the members, including the **INDIVIDUAL Defendants, LLC Defendants** and others known and unknown, in conducting and participating in the affairs of the Moving Enterprise include the following:

a)   Members of the Moving Enterprise made false representations to the USDOT and employees of the USDOT in order for the Moving Enterprise, through the affiliated companies, to operate as an interstate mover of household goods.  That included misrepresentations to the USDOT that affiliated companies of the Moving Enterprise did not share common owners, operators, managers, and employees.

b)   To make those false representations, Defendants participate with each other through fictitious entities to deceive and conceal from federal and state government agencies, USDOT and consumers nationwide the identity of the enterprise's owners by Defendant **DRAYTON** creating the entities online, using the wires, including the Florida Secretary of State website as the filings below show:

- On November 28, 2016, Articles of Organization are filed for Liberty Bell Moving Group LLC (**Exhibit A**)(all exhibits are incorporated herein as if fully set forth in this complaint);

- On April 12, 2018, Articles of Organization are filed for Gold Standard Relocation LLC (**GOLD STANDARD**), naming Defendant **DRAYTON** as the manager (**Exhibit B**);

- On July 9, 2018, a name change is filed for Liberty Bell Moving Group LLC, now named LB Moving Group LLC (**Exhibit C**);

- Further proving the Moving Enterprise of the **LLC Defendants** and **Individual Defendants** is **DRAYTON**'s July 16, 2018 filing of a "Registration of Fictitious Name" showing LB Moving Group LLC owns Gold Standard Relocation LLC (**GOLD STANDARD**) (**Exhibit D**);

- Then on February 21, 2019, an amendment is filed changing the name LB Moving Group LLC to Defendant **RELOCATE US LLC** (**Exhibit E**);

- At this point, the address becomes relevant as on June 10, 2019 **DRAYTON** files an Amendment to **GOLD STANDARD**'s Articles of Organization by adding Moving Solutions LLC as its new name at a principal office address of "933 Beville Rd Unit 101H South Daytona Fl 32119" (**Exhibit F**), then every **LLC Defendant** uses that address for filings;

- On August 12, 2019, an amendment is filed changing the principal office address of **RELOCATE US LLC** to "933 Beville Rd Unit 101H South Daytona Fl 32119" (**Exhibit G**);

- Next, on August 28, 2019, Defendant **DRAYTON** creates yet another fictitious moving company for the Enterprise by filing a fictitious name registration for "Fast-Trucking" owned by **Relocate US LLC** using the same principal office address of "933 Beville Rd Unit 101H South Daytona Fl 32119" (**Exhibit H**); and

- Next, on May 28, 2020, Defendant **DRAYTON** boldly publishes that she and her fictitious **LLC Defendants** have been and are all related to Defendant **NEW ERA** by filing a fictitious name registration showing **RELOCATE US LLC** owns Defendant **NEW ERA** and they use the same principal office address of "933 Beville Rd Unit 101H South Daytona Fl 32119" as all the other fictitious moving companies **DRAYTON** created (**Exhibit I**).

c)    All of the above filings and their related filings violate state and federal laws, including USDOT laws regarding corporate filings and criminal perjury and criminal false filing laws, as all such documents are false, fraudulent and intended to support the racketeering Moving Enterprise to commit crimes, and all such documents are filed under penalty of perjury by Defendant **DRAYTON** on behalf of Defendants, including their use of false addresses that are not a "principal business address" pursuant to the laws.

d)     Defendant **GOLD STANDARD** operates with all of the above entities by **GOLD STANDARD** contacting consumers to convince them that they are movers with their own trucks and a team of customer service and other representatives and professionals operating under the guise of USDOT and other purported professional licenses, who are trained to make the move seamlessly, including Defendants **THOMAS GALCZYNSKI**, **JENNIFER BLAKE**, **SAMMI "Doe"** and **RYAN F "DOE"**, as Defendant **GOLD STANDARD** enters into Binding Estimates via email with consumers and thousands of dollars are paid to **GOLD STANDARD** using the wires, including Zelle, a wire based financial service permitting bank transfers from consumers to other persons or entities, so **Defendants** can load consumers' property on trucks intending to steal it, sell it and extort consumers to pay thousands more than the Binding Estimate, and in addition to the thousands of dollars **Defendants** already illegally extracted from consumers as deposits and fees paid on the moving date.

e)     It was and is further part of the Moving Enterprise that after consumers complained to the USDOT and other state and federal agencies about the criminal actions of the Moving Enterprise, members of the Moving Enterprise submit documents to state and federal regulators containing misrepresentations in order to operate a new affiliated company of the Moving Enterprise as an interstate carrier of household goods.

f)     It was and is further part of the Moving Enterprise that its members use aliases when working on behalf of affiliated companies of the Moving Enterprise to conceal their identities from law enforcement and customers.

g)     It was and is further part of the Moving Enterprise that its members submit fake reviews to online sources regarding services provided by affiliated companies of the Moving Enterprise to induce customers to choose the Moving Enterprise.

h)     It was and is further part of the Moving Enterprise that its members use wire communications, such as emails, to send false representations to customers and potential customers to induce them to hire affiliated companies of the Moving Enterprise to move their household goods.

i)     It was and is further part of the Moving Enterprise to email to customers  "binding" moving estimates without first conducting an on-site inspection of the household goods.

j)     It was and is further part of the Moving Enterprise that binding estimates that members of the Moving Enterprise offered to customers were low so as to induce customers to hire the Moving Enterprise to move the customers' household goods.

8

k)      It was and is further part of the Moving Enterprise that, after agreeing to a binding estimate and loading customers' household goods on to trucks, members of the Moving Enterprise increased the cost of moves above the price agreed to in the binding estimate.

l)      It was and is further part of the Moving Enterprise that after agreeing to a binding estimate and loading the goods, members of the Moving Enterprise falsely claimed that the customers' household goods took up more cubic footage than was set forth in the binding estimate.

m)      It was and is further part of the Moving Enterprise that its members misrepresented to customers the amount of actual cubic footage of household goods involved in moves.

n)      It was and is further part of the Moving Enterprise that its members knowingly charged customers for moving more cubic footage of household goods than was actually loaded by members of the Moving Enterprise, and others known and unknown.

o)      It was and is further part of the Moving Enterprise that its members tracked the "actual" and "real" cubic feet of space that household goods occupied during moves.

p)      It was and is further part of the Moving Enterprise that its members sent emails to each other containing documents detailing the "actual" and "real" cubic feet used during moves, along with documents detailing the cubic footage that was used to calculate the amount the Moving Enterprise charged to customers for the same moves.

q)      It was and is further part of the Moving Enterprise that its members at times caused customers' household goods to be stolen while transporting the goods interstate by not delivering the household goods after loading them and receiving payment for moving the household goods.

r)      It was and is further part of the Moving Enterprise that its members extorted, and caused others known and unknown, to extort, customers into paying money to the Moving Enterprise by increasing the cost of moves after loading customers' household goods and by refusing to relinquish customers' household goods until customers paid an inflated price for delivery of the household goods.

34.   As shown below, consumers paid money to Defendants who reinvested that racketeering money by paying (a) insurance needed for USDOT licenses, (b) USDOT license fees, (c) Secretary of State filing fees for fictitious entities and (d) other fees, which all further enables Defendants to profit from their racket.

**Overt Acts Supporting the RICO**

35.   In furtherance of the Moving Enterprise and to achieve its illegal objective, the following overt acts, among others, were committed in the Eastern District of New York and elsewhere, all in violation of 18 USCS §1962(d), upon the following victims, and each person victimized below had an ascertainable and definable loss by being deprived of their ability to use or transfer their property as Defendants used the interstate wires, including phone, emails and Zelle bank transfers to contact, contract with, and obtain money from customers.

   **-Consumers Victimized by Defendants Moving Enterprise Racket**

     **Plaintiff Stephanie Wagner**

36.   After Plaintiff Wagner searched for a moving company to move her property from New to North Carolina for December 17, on November 14 and  16, 2020, Defendants **GOLD STANDARD** and **RYAN F** e-mailed her that she was their "priority" and would receive a 50 to 70% discount for her move as they had a truck going on her route (**Exhibit J**).

37.   As a result of Defendants email solicitations, Plaintiff called **RYAN F** who confirmed **GOLD STANDARD** is the moving company, had their own trucks, and Plaintiff's property would be stored in "a secure air-conditioned warehouse in New Jersey."  **RYAN F** never stated **GOLD STANDARD** was a broker.

38.   On November 25, 2020, Plaintiff e-signed **GOLD STANDARD**'s Binding Estimate for $2,213.33 to move her entire possessions, furniture, photos, clothes, electronics and home office and paperwork – everything she owned- from New York to North Carolina on December 17, 2020, including six months storage to the end of June, 2021 (**Exh J**).

39.   On December 15 and 16, 2020, Defendant **BLAKE,** listed as **GOLD STANDARD's** "Dispatch Manager", emailed Plaintiff to review her inventory and pick-up date and informed the balance due for the move was $2,500.00 by cash or money order (**Exh J**).

40.   On the move date of December 17, 2020, a truck arrived at Plaintiff's home in New York with three men, one named Walter Roqku, and after loading all of her property on to the truck and knowing she had to move that day, Roqku demanded more money then the Binding Estimate, forcing Plaintiff to pay $1,000 by Zelle to Roqku and a $2,522.17 check to Georgina Fandina, whom Roqku said was his girlfriend who had a bank account, for a total of $3,522.17.

41.   After taking that money, Roqku then had Plaintiff sign documents listing Defendant **NEW ERA** and its US DOT license number 3371822 as the motor carrier (**Exhibit K**).  The documents included a Bill of Lading totaling $6,036.50, not the $2,213.33 stated in the Binding Estimate.

42.   In sum, by December 17, 2020, Plaintiff paid a total of **$4,335.30** by paying $3,522.17 on December 17 and $813.13 on November 27, 2021 via a wire transfer to **GOLD STANDARD**.

43.   Moreover, **NEW ERA's** license was revoked before that move date, nor were they authorized to do business since November 2020.

44.   Without a license to operate, Defendants knowingly stole, converted and illegally took possession of Plaintiff's money and property.

45.   At no time before, during or after the move did Defendants disclose to Plaintiff that **NEW ERA** was not a licensed motor carrier and to date they have illegally concealed that information.

46.   From July through September, 2021, after her six month storage ended per the Binding Estimate, Plaintiff demanded her property returned but Defendant **SAMMI "DOE"** of **GOLD STANDARD** appeared by emails to continue the fraud that her property was safely stored as he states he was talking to **NEW ERA** and others regarding Plaintiff's property when **NEW ERA** did not exist, and he shamelessly uses CoVid as his excuse for disappearing for months during that time by claiming he had it (**Exhibit L).**

47.   Defendant **SAMMI "DOE"'s** emails were all part of the Moving Enterprise's continuing frauds and thefts as Defendants knew, should have known and were obligated to know, that they and their agent **NEW ERA** illegally took and stole Plaintiff's money and property, and CoVid was no excuse for the thefts as **GOLD STANDARD (**a) advertises on the web and (b) their numerous agents and employees, including Defendants **THOMAS GALCZYNSKI, JENNIFER BLAKE, SAMMI "DOE",** and **RYAN F "DOE** solicit Plaintiff and other consumers by phone and emails to confirm that Defendant **GOLD STANDARD** are legally handles moves to the customer's satisfaction.

48.   As a direct and proximate result of the Moving Enterprise, it is now over a year since Defendants took Plaintiff's money and property, and she never received her property as a result of Defendants' Moving Enterprise, whereby she has been damaged by $4,335.30 paid to Defendants for the move and over $150,000.00 in property loss, in addition to irreplaceable personal and cherished photos and family heirlooms having an irreplaceable intrinsic value, and Plaintiff has been denied access to her property

### The Three Plaintiffs in the *Spinner* Case

49.   The *Spinner* Second Amended Complaint at docket 34 details how three different Plaintiffs (Spinner, Pompliano and Schwartz) during 2020 all similarly entered into Binding Estimates with **GOLD STANDARD** over the wires, paid **GOLD STANDARD** thousands in deposits and

GOLD STANDARD each time represented they were the moving company and on each said Plaintiff's moving date Defendant **NEW ERA** appeared and after loading their property on the trucks they extorted each Plaintiff to pay thousands more in cash, and threatened to auction off property of they were not paid, causing this court to issue a preliminary injunction prohibiting Defendants from damaging Spinner's property and to disclose its location.

50.    All of the *Spinner* Plaintiffs' property was damaged, stolen and destroyed in whole and in part by Defendants, and Defendants prevented them from access to their property.

### Other Complaining Parties

51.    The BBB lists 21 complaints up to June 2021 against **NEW ERA** at https://www.bbb.org/us/nc/ smithfield/ profile/movers/new-era-relocation-0593-9032 6232/complaints of **NEW ERA**'s deceptions, damages, and thefts of property and money.

52.    Notably, the USDOT directed **NEW ERA** to cease business seven months before, but they illegally continued to load consumers' property on to unlicensed trucks to move interstate, and ultimately steal the property or use it to extort consumers for more money.

53.    The BBB lists 233 complaints up to October 2021 against **GOLD STANDARD** at https://www.bbb.org/us/fl/fort-lauderdale/profile/moving-brokers/gold-standard-relocation-0633- 90582863/complaints showing **GOLD STANDARD's** deceptions, damages, and thefts of property and money.

### CLASS ALLEGATION

54.    Plaintiff Wagner brings this action as a consolidated case with *Spinner* on behalf of herself and a class of persons, including the *Spinner* Plaintiffs, based upon a four (4) year statute of limitations under RICO, subsuming a three (3) year statute of limitations under GBL 349, initially defined as follows:

> For the period of four years before **the filing of this** complaint, being December 19, 2018 to December 19, 2021, all those consumers who entered into a Binding Estimate with Defendant **GOLD STANDARD** or any of the **LLC Defendants,** and whose property was then loaded on to motor carrier trucks and either some (a) or all of the property was returned or not returned at all to the consumer or (b) after Defendants took possession of their property, the consumer was directed by Defendants to pay more than the Binding Estimate and did pay more than the Binding Estimate and either had their property returned undamaged or partially or wholly damaged or some or all of the property was never returned.

55.    Excluded from the Class are Defendants and any affiliate, parent, or subsidiary, any entity in which Defendants have a controlling interest, any officer, director, employee, successor or

assign of Defendants, and any Judge to whom this case is assigned as well as his or her immediate family and staff.

56.    The applicable criteria of Federal Rule of Civil Procedure Rule 23 are as follows:

Numerosity. Members of the Class are so numerous that their individual joinder herein is impracticable because it is composed of thousands of consumers geographically dispersed throughout New York and the United States.  Numerosity is based upon the fact that there are presently over 50 complaints listed with the USDOT, BBB and other sites on the internet about the **LLC Defendants** thefts, frauds and damage, and common-sense dictates that number can be doubled or tripled as many consumers simply pay the ransom and do not realize they have rights under the law or a forum to complain to. Thus, the number of class members is more than the at least 50 needed.  Also, the Class is ascertainable and identifiable because the precise number of members of the Class can be ascertained through discovery of Defendants' sales, service, maintenance and complaint records, among other discovery to the DOT and local BBB bureaus, among other things.

Common questions. Common questions of law and fact exist as to all members of the putative Class and predominate over questions affecting only individual Class members. Those common questions include:

  a.  Whether Defendants violated the Carmack Amendment, as alleged in this complaint by convincing consumers they were a moving company and loading their property onto their trucks to be stolen and damaged, while Defendants and their subsidiaries, agents and employees misled consumers that they were resolving the damage when they were not, and did not intend to be liable, while they collected and received fees form the consumers.

b.  Whether Defendants operated a Moving Enterprise of illegal racketeering activities as alleged herein, and requiring the following injunctions pursuant to Title 18:

   (i)  ordering any person to divest himself of any interest, direct or indirect, in any enterprise;

   (ii)  imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce;

   (iii)  ordering dissolution or reorganization of any enterprise,  and

   (iv)  making due provision for the rights of innocent persons.

c.  Whether Plaintiff and the other putative Class members are entitled to equitable relief, including but not limited to restitution or a preliminary and/or a permanent injunction.

d.   Whether Plaintiff and the other Class members are entitled to damages and other monetary relief, including a one-time uniform payment representing the average damage amount of all claims.

Typicality. Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff was induced into entering into moving contracts by Defendants holding themselves out as movers, signed a Binding Estimate and paid money for a move per that Binding Estimate that Defendants never intended to honor.

Adequacy. Plaintiff is an adequate representative of the RICO Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she and her counsel will fairly and adequately represent the interests of the Class.  Plaintiff retained counsel competent and experienced in complex class action litigation to prosecute this action vigorously.

Superiority. The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible as, upon information and belief, each member expended on average about $7,000.00 for their moves.  Class members of moving scams can not afford to sue such defendants as, for one thing, lawyers are not willing to take their cases since their total hours and fees for such actions are more than what may be recoverable and contingency arrangements are not worth these cases as single cases are not worth the amount of time nor can consumers afford to pay attorneys hourly as the time outweighs the damages. Even if Class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing a myriad of actions, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system as presented by legal and factual issues of each case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

57. Alternatively, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede Plaintiffs' ability to protect their interests; and

c.  Defendants acted or refused to act on grounds generally applicable to the Class, for instance operating an illegal Moving Enterprise racket in violation of RICO and refusing to comply with Federal interstate moving laws, including the Carmack Amendment; thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT ONE: RICO §1962 (a), (b), (c) and (d)

58.   Plaintiff repeats each and every allegation above as though fully set forth herein.

59.   Plaintiff and all putative Class members suffered injury under 18 USC §1962(c) as stemming from the predicate acts.

60.   Plaintiff and all putative Class members suffered under 18 USC § 1962(a) as stemming from the investment of racketeering income, and

61.   Plaintiff and all putative Class members suffered injury  under 18 USC §1962(b) as stemming from Defendants' acquisition of an interest in or control over the Moving Enterprise.

62.   All of which damaged said Plaintiffs by interfering with and preventing access to their property and paying fees for interstate moves Defendants conducted illegally.

## COUNT TWO: Carmack Amendment

63.   Plaintiff repeats each and every allegation above as though fully set forth herein.

64.   LLC Defendants, as carriers and brokers, and their agents and employees, had duties under the Carmack Amendment, 49 U.S.C. §14706 to properly and carefully to load, handle, stow, carry, keep, care for, discharge, and deliver the household goods carried in the same good order and condition as when tendered to and accepted and to provide a Bill of Lading.

65.   LLC Defendants assumed responsibility for, and were responsible for, the care and custody of the goods from the place of initial receipt to the place of intended delivery.

66.   LLC Defendants breached their duties under the Carmack Amendment by failing to properly and carefully to load, handle, stow, carry, keep, care for, discharge, and deliver the goods carried in the same good order and condition as when tendered and accepted, and have refused to deliver the goods.

67.   LLC Defendants breached their duties under the Carmack Amendment by failing to provide the location of the goods that they are holding hostage at some undisclosed address or provide any evidence that the goods are not physically damaged, nor provide Plaintiff the opportunity to survey the condition of the goods, and/or the take delivery of them or mitigate any damages.

68.   LLC Defendants breached their duties under the Carmack Amendment by affirming in a voicemail message of December 28, 2020 that they are auctioning Plaintiff's property for sale rather than deliver it to Plaintiff.

69.   LLC Defendants breached their duties under the Carmack Amendment by forging a Bill of Lading.

70.    By reason of the foregoing, Defendants were a receiving and/or delivering carrier and broker within the meaning of the Carmack Amendment, 49 U.S.C. §14706, and breached their duties under that statute and/or under the contract of carriage.

71.    The Carmack Amendment holds all such carriers and owners of carriers liable, for which all individual Defendants, including Defendant Drayton are personally liable.

72.    As a direct and proximate cause of all Defendants' breaches under the Carmack Amendment, Plaintiffs suffered damages over $100,000, which amount may be further determinable, and which was not the result of any contributing acts, omissions, negligence or breach of contract on the part of Plaintiff.

73.    Defendants are jointly and severally liable for any and all damages for their violations of the Carmack Amendment, and the Carmack Amendment imposes strict liability for any breach.

## COUNT THREE: Disgorge Profits

74.    Plaintiff repeats each and every allegation above as though fully set forth herein.

75.    The unlawful conduct of all Defendants named herein constitutes deceptive, fraudulent and wrongful conduct.

76.    By virtue of their wrongful conduct, all Defendants received money from Plaintiffs, profited from these illegal transactions and must return all such fees that rightfully belong to Plaintiffs, as their unlawful conduct warrants they disgorge all such monies, with interest thereon.

## COUNT FOUR: GBL §349

77.    Plaintiff repeats each and every allegation above as though fully set forth herein.

78.    Defendants, specifically **GOLD STANDARD** and **NEW ERA**, operate a consumer-oriented business of interstate moving and brokering such moves.

79.    All Defendants materially misled Plaintiffs by representing that Gold Standard was not a broker and continued to materially mislead Plaintiffs into believing they are a reputable company operating under Federal laws, abide by such laws and properly pack and store their property, including in climate-controlled facilities, pursuant to the Contract and laws, leading Plaintiffs to agree to and pay for those services that Defendants never intend to provide but will extort Plaintiffs for more cash as is their custom to hold property hostage and damage and steal the rest.

80.    At all times relevant hereto, Defendants knew, or were willful in not knowing, that they were false and misleading in the manner referenced above.  Indeed, Defendants have an

established history of deceiving consumers the same way so they can gain control of their property then hold it hostage for cash ransoms as numerous BBB and DOT complaints confirm.

81.   To further dupe consumers that Defendants are a legitimate business with an actual place of business as required by state and federal laws, Defendants list false addresses belonging to other stores as their "headquarters", when they do not have a physical headquarters, and in violation of 49 CFR sec 390.5 which mandates a "principal place of business".

82.   As a direct and proximate result of Defendants' frauds, deceptions and deliberate violations of laws existing to protect consumers exactly from these frauds, Plaintiffs suffered the conversion and loss of their property for months, were subjected to extortion demands for cash and the bulk of their property was missing, damaged and destroyed beyond repair.

83.   Plaintiffs incurred expenses, costs and attorney's fees to have to appear before this court and Plaintiff Spinner specifically initiated filing for and obtained two injunctions directing Defendants to return his property, one of which found, based upon the evidence provided, the likelihood that Defendants **GOLD STANDARD** and **NEW ERA** were the same operation.

84.   Defendant's acts and practices are not unique to the parties.  These acts and practices of Defendants to deceive consumers, deliberately confuse them as to the nature of their company relationships and hold property hostage for cash are consumer-oriented and have a broader impact on consumers at large as numerous similar complaints exist online, including at the BBB and DOT websites.

## COUNT FIVE:  Fraud

85.   Plaintiff repeats each and every allegation above as though fully set forth herein.

86.   Defendant GOLD STANDARD appeared before this court by its counsel at a January 13 hearing and then by a January 21, 2021 Verified Answer, filed at Docket 19 in the *Spinner* case, claiming it is only a broker and there is no recourse against them.

87.   However, GOLD STANDARD's employees and agents specifically told each and every Plaintiff in Spinner and the Plaintiff here that they are the moving company.

88.   Those are (a) a material, false representation, (b) made with the intent to defraud, (c) that was reasonably relied on by the plaintiffs to enter into contracts with Defendants, (4) thereby causing Plaintiffs damage as they did not want a broker and understood they were dealing directly with the mover; yet when their goods were held hostage, stolen and damaged, Defendants denied any liability despite being liable under federal laws.

89.   Plaintiff was damaged by paying thousands of dollars for moving services by **GOLD STANDARD** that were false, fraudulent, and meant to steal and damage her property.

## COUNT SIX: Breach of Contract

90.   Plaintiff repeats each and every allegation above as though fully set forth herein.

91.   Plaintiff entered into a Binding Contract with Defendants, paid monetary consideration and Defendants took her property pursuant to its terms.

92.   Defendants materially breached the Contract by not keeping her property safe or using a clean and climate-controlled storage unit, which are material terms of the Contract, holding her property hostage for cash not contracted for, and stealing and damaging her property.

93.   As a direct and proximate result of the breaches, Plaintiff has been damaged in the amount to be ascertained, but believed to be not less than $100,000.00.

## COUNT SEVEN: Negligence

94.   Plaintiff repeats each and every allegation above as though fully set forth herein.

95.   All Defendants, including **NEW ERA** and **GOLD STANDARD**, were under an absolute and non-delegable duty to exercise ordinary due and reasonable care in the packing, loading, securing, transportation, possession, storage and handling of the Plaintiffs' property so as to avoid damage and destruction thereto.

96.   Defendants breached their duty to exercise reasonable care, which breach solely, directly and proximately resulted in the damage to and the destruction of the Plaintiffs' property.

97.   As a proximate result of their negligence and lack of care by all Defendants, including **NEW ERA** and **GOLD STANDARD** and their principals, agents, servants and employees, and without any contribution thereto by Plaintiff, her property was damaged and destroyed in an amount of not less than $100,000.00.

## Permanent Injunction and Declaratory Relief

98.   Plaintiff repeats each and every allegation above as though fully set forth herein.

99.   USCS Fed Rules Civ. Proc. R 65 grants district courts the power to grant injunctions, which can be permanent, and declaratory relief is also permitted.

100.  Plaintiff and the consuming public suffer irreparable injury in the absence of an injunction and declaration that the **LLC Defendants**, including **GOLD STANDARD** and **NEW ERA**, are the same company and violated numerous DOT and Federal and state laws by using false addresses, switching names and LLC's, forging documents such as Plaintiff Spinner's Bill of Lading in the *Spinner* case and deliberately confusing the public and the DOT as to who is a

broker or carrier and which LLC is controlling the move by switching LLC names and creating new names to operate under once the DOT revokes an LLC's license, which an injunction to cease such conduct is needed.

101.  Remedies at law, such as monetary damages, are inadequate to compensate for the injury because Defendants' misconduct leads to the loss of irreplaceable antiques and heirlooms that are not precisely quantifiable for Plaintiffs and consumers at large.

102.  The balance of hardships tips in Plaintiff's and all consumers favor as undoubtedly no one can put a price on family heirlooms and antiques handed down from generations, and once damaged, lost or stolen because of the frauds perpetrated by Defendants then they can never be replaced, which consumers use these Defendants to protect their goods, not steal them.

103.  The public interest would not be disserved by the issuance of a permanent injunction mandating Defendants disclose their true identities to protect property as the public interest would be served to rid the nuisance that these Defendants create with their established history of holding consumers' household goods hostage for their own selfish pecuniary gain at the expense of innocent citizens who just want their household goods transported to their new homes without being victimized by Defendants' extortion.

104.  Furthermore, Defendant **GOLD STANDARD** cannot escape liability as they take money from these transactions and they and **NEW ERA** are one and the same entity owned by Defendant **MARGARET DRAYTON**.  Thus, a declaration and injunction about these companies and **DRAYTON**'s involvement is also needed to protect the public from their shell game used to hold property hostage.

105.  Also, the public has an interest in not being deceived by Defendants who steal people's properties under the guise of a government issued DOT license that does not exist, while **GOLD STANDARD** uses its DOT license to aid and abet the illegal conduct.

106.  Defendants' activities as alleged herein warrant declaratory relief and a permanent injunction from their false and fraudulent activities in violation of state and federal law.

## DAMAGES

*WHEREFORE*, Plaintiff, on her own behalf and on behalf of the putative Class demands judgment against Defendants as follows:

A.  An order certifying the Class and appointing Plaintiff and her counsel to represent it;

B.  An order declaring as unlawful the conduct alleged to be a deceptive sales practice and violations of the Carmack Amendment, as well as related federal laws, and enjoining Defendants from continuing to engage in unlawful business practices as alleged herein;

C.  Regarding the RICO claims, an order to prevent and restrain Defendants section 1962 violations, as detailed in paragraphs 31-53 herein, including, but not limited to:

  (i) ordering any person to divest himself of any interest, direct or indirect, in any enterprise;

  (ii) imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce;

  (iii)  ordering dissolution or reorganization of any enterprise,  and

  (iv) making due provision for the rights of innocent persons;

D.  An order for Plaintiff to recover threefold the damages she sustained and the cost of the suit, including reasonable attorney's fees,

E. An order awarding Plaintiff and members of the Class restitution or other equitable relief as the Court deems proper, including, consequential damages;

F. An order awarding Plaintiff and members of the Class pre-judgment and post-judgment interest, treble damages and punitive damages in an amount not less than Five Million Dollars;

G. An Order requiring Defendant to provide notice to the Class under Rule 23;

H.  An order awarding Plaintiff and the members of the Class reasonable attorneys' fees and costs of suit, including expert witness fees;  and

I.  An order and judgment awarding such other and further relief as this Court may deem just and proper and fair.

## TRIAL BY JURY IS DEMANDED

      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

Dated:  December 19, 2021          **LAW OFFICES OF SUSAN CHANA LASK**
/s Susan Chana Lask

_____
**Susan Chana Lask, Esq.**
*Attorney for Plaintiff and*
*the putative Class*
**244 Fifth Avenue, Suite 2369**
**New York, NY 10001**
**917-300-1958**
**scl@appellate-brief.com**

**Verification of Plaintiff**

I, Stephanie Wagner, declare as follows:

1. I am the Plaintiff in the present case, over the age of 18 years old, a citizen of the United States of America, at all times alleged herein up to Defendants taking my property I was a resident, citizen and domicile of New York and presently in Hawaii.

2. I am the owner of the household goods and property at issue in the complaint and the shipper of the goods pursuant to an interstate moving Contract. I have personal knowledge of the facts set out in the foregoing *Verified Complaint,* and if called to testify I would competently testify as to the matters stated therein.

3. Under 28 U.S.C. §1746, I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint* are true and correct.

Dated: December 19, 2021

Stephanie Wagner